**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALVIN RUSSELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>　　　　Defendant. | **1:13-cv-01671-GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

### I.  INTRODUCTION

Plaintiff Calvin Russell ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

### II.  BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff is currently 47 years old and was born in Meridian, Mississippi. AR 32. He

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. ECF Nos. 7, 8.
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

attended high school in Whitman, Mississippi and advanced up to the 11th grade. AR 36. While living in Mississippi, he worked for two years as a cloth handler, which involved lifting rolls of cloth of up to 20 pounds and sorting the rolls into bins. AR 37, 139. He last held this job in 1995 and has not worked since then. *Id.* From 2001 until 2009, Plaintiff was incarcerated for selling cocaine. AR 44. After his release, Plaintiff entered a sober living environment and received food stamps. AR 33. Plaintiff reports symptoms of depression, paranoia, irritability, impulsivity, mood swings, and episodic hallucinations. AR 278, 290. He also suffers from seizure disorder as the result of a head injury he sustained when he was a child. Plaintiff takes Dilantin to control his seizures. AR 239, 271. He has also been treated for knee and chest pain, although neither is cited as a reason why Plaintiff cannot work. AR 42, 150, 232.

On March 16, 2010, Plaintiff filed his first application for SSI. AR 120-126. The claim was initially denied on October 23, 2010. AR 68-72. Plaintiff filed a request for a hearing which was dismissed as untimely on April 15, 2011. AR 62-66. Plaintiff then filed a request for review with the Appeals Council, which was granted on August 4, 2011. AR 58-61. A hearing on the claim was then conducted before Administrative Law Judge Alexander Weir III (the "ALJ") on April 24, 2012. AR 28-53. On May 18, 2012, the ALJ issued an unfavorable decision and determined that Plaintiff was not disabled. AR 10-23. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied his appeal, rendering the order the final decision of the Commissioner. AR 8, 4-6.

**III.   THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, Plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

2

work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 10-23. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 16, 2010, the date of his application. AR 16. Further, the ALJ identified mental depression, substance abuse, and seizure disorder as severe impairments. AR 16. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 17-18.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

lift and carry 20 pounds occasionally, and 10 pounds frequently; to stand and walk 6 hours in an 8-hour day; to sit for six hours in an eight hour day; and to perform light work. AR 19. The ALJ further determined that Plaintiff had moderate limitations in: performing detailed or complex tasks; dealing appropriately with co-workers, supervisors, and the general public; and in maintaining concentration and attention. *Id.* Although the Plaintiff had no past relevant work, he could perform other work that exists in national economy. AR 22.

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V.   DISCUSSION

### A.   The ALJ Properly Evaluated the Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of the opinion of Vinod Sodha, M.D., a psychiatrist who treated Plaintiff. Dr. Sodha treated Plaintiff at the Parole Outpatient Clinic on two occasions in 2010 and 2011. AR 289. On April 18, 2012, Dr. Sodha completed a "Medical Source Statement of Ability to Do Work-Related Activities" checklist in which he indicated that Plaintiff had: moderate limitations in understanding and carrying out simple instructions; marked limitations in understanding and carrying out complex work-related instructions; and marked limitations in interacting appropriately with the public, supervisors, and co-workers. AR 297-298. He further indicated that

Plaintiff would have marked limitations in responding appropriately to usual work situations and to changes in a routine work setting. AR 298. Finally, he included a short handwritten note at the end of the checklist form stating that Plaintiff "remains extremely paranoid around authority figures; withdraws with pacing / and agitation." AR 298.

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Sodha's opinion.[5] In particular, Plaintiff argues that: (1) two visits to Dr. Sodha are enough to make Dr. Sodha a "treating physician"; (2) the ALJ incorrectly disregarded Dr. Sodha's opinion merely because he used a checkbox form; and (3) the ALJ ignored the handwritten note at the bottom of Dr. Sodha's checkbox form, suggesting that the ALJ's reasons for rejecting the form were not supported by substantial evidence. Plaintiff's Opening Brief 12-13, ECF No. 12. Plaintiff also briefly argues that Dr. Sodha's opinion is consistent with other opinions in the record, particularly that of Mary Bridges, M.D., a consultative examining psychiatrist. *Id*. at 14-15.

The Commissioner argues that the ALJ properly considered Plaintiff's mental impairment by considering the history of Plaintiff's treatment and thoroughly reviewing Dr. Sodha's report. Moreover, the ALJ provided specific and legitimate reasons for the conclusions he formulated regarding Dr. Sodha's opinion. Specifically, the Commissioner argues that: (1) Dr. Sodha's opinion was contradicted by two consultative examiners, including Dr. Bridges, and at least one non-examining physician; and (2) it is entirely appropriate to disregard a treating physician's opinion when that opinion is contained in a "check-mark form, it did not include an explanation, and the sparse medical records failed to support his conclusion." Defendant's Responsive Brief 6:1-4, ECF No. 13. Finally, the Commissioner notes that Plaintiff's condition appears to be stable and well-controlled over time. *Id.* at 6:15-26.

**B.  Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

---

[5] The ALJ credited Dr. Sodha's opinion "to the extent that he has not entirely ruled out the claimant's ability to perform simple and repetitive tasks." AR 22. Only Dr. Sodha's findings of marked limitations were rejected.

(examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). However, a "treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion").

When the treating doctor's opinion is not contradicted by another doctor, it can be rejected for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record for the rejection. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984). It can, however, *support* the rejection of the opinion of a treating or examining physician. *See, e.g., Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, "the ALJ did not rely on [the non-examining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ." *Magallanes*, 881 F.2d at 752. Rather, there was other evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52. Thus, the opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings

or other evidence in the record"). Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d at 639, 642 (9th Cir. 1982) *quoting Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971).

### C. Analysis

The ALJ evaluated Plaintiff's impairments and found that Plaintiff had mild restrictions in daily living and social functioning; mild restrictions in maintaining concentration, persistence, and pace; and moderate difficulties in social functioning. AR 18. The ALJ summarized Plaintiff's psychological history and noted that Plaintiff's mental impairments appeared to respond to medication. AR 20. He noted that although Plaintiff claimed that he could not concentrate or pay attention, clinical tests seemed to indicate otherwise. AR 20, 278. The ALJ also pointed out that a consultative examination could not rule out malingering and that Plaintiff had apparently engaged in criminal activity shortly before the period for which he alleges disability.[6] AR 20, 256, 277.

The ALJ reviewed a mental residual functional capacity assessment conducted by M. Salib, M.D., a reviewing physician, who determined that Plaintiff had mild limitations in activities of daily living and maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace. AR 215-217. He also found that Plaintiff had moderate limitations in the ability to understand, remember, and carry out detailed instructions. AR 226. Dr. Salib concluded that the Plaintiff "retains the ability to sustain simple and repetitive work over a normal work day/week." AR 217.

The ALJ considered Paulette Harar, M.D.'s assessment of Plaintiff's records, which occurred after Dr. Salib's assessment. Dr. Harar, a reviewing physician, found that Plaintiff could lift or carry 20 pounds occasionally, 10 pounds frequently; stand or walk for at least 6 hours in an 8 hour work day; sit for 6 hours in an 8 hour work day; push or pull unlimited amounts, other than as shown for lifting or carrying; frequently stoop, kneel, crouch, or crawl; and climb ramps and stairs. He should, however, avoid even moderate exposure to heavy machinery or heights. AR

---

[6] In fact, he appears to have been incarcerated as recently as June 2011. AR 277.

238-242. She concluded by concurring with Dr. Salib's analysis, saying that "the RFC of light with seizure precautions appears entirely medically reasonable." AR 231.

The ALJ also noted Plaintiff was evaluated by Mary Bridges, M.D., a psychiatric consultative examiner, on January 5, 2012. AR 21. Dr. Bridges determined that Plaintiff would not have any limitations performing simple and repetitive tasks, but would have mild limitations completing detailed and complex tasks. AR 279. He would have mild limitations performing work activities on a consistent basis without special or additional supervision and moderate limitations in completing a normal workday or workweek. While he would have moderate limitations in accepting instructions from supervisors and interacting with coworkers and the public, he "would be able to handle the usual stresses, changes and demands of gainful employment." AR 279.

The ALJ also made brief mention of a consultative examination conducted by Ahmad R. Riahinejad, Ph.D. on July 20, 2010. Dr. Riahinejad determined that Plaintiff "was able to relate with other people and accept supervision," but cautioned that Plaintiff's "records are needed to corroborate" this finding. *Id.*

The ALJ considered Plaintiff's more recent mental health treatment dating back to 2009. AR 260-262. The ALJ noted that Plaintiff was receiving medications including Celexa, Benadryl, and Seroquel during this period and later on was alternatively prescribed Geodon and Dilantin. AR 17, 260, 277. A number of reports during this period report that Plaintiff's condition was stable with these medications. AR 17, 49, 171, 180-182, 203, 231, 260-262, 291.

With respect to Dr. Sodha's opinion, the ALJ noted the following:

> Accordingly, weight is given to Dr. Sodha's opinion to the extent that he has not entirely ruled out the claimant's ability to perform simple and repetitive tasks. No weight is given to the remainder of the opinion since it is in check-mark form, inconsistent with other medical observations of less than marked social functioning (Ex. 3F/5; 16F/5) and conclusions regarding the claimant's social functioning, and explanation is lacking from the sparse medical record and the 2 time examination history as shown in the record.

AR 22.

Thus, the ALJ rejected some of the limitations outlined in Dr. Sodha's form because: (1)

8

the limitations were offered on only a check-mark form; (2) they were inconsistent with the other medical observations contained in the record; and (3) Dr. Sodha had only seen the Plaintiff twice. Because it does appear that Dr. Sodha's opinion with respect to Plaintiff's social functioning is contradicted by other opinions within the administrative record, the ALJ need only have offered "specific and legitimate reasons" which are supported by substantial evidence to reject Dr. Sodha's opinion. *Murray*, 722 F.2d at 502. All of the above listed reasons offer specific and legitimate bases to reject a treating doctor's opinion. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F. 3d 1196-1197 (9th Cir. 2004) ("The ALJ discounted the [treating physician's] view because it was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of the [the plaintiff's] medical condition"). Moreover, the ALJ is permitted to use the length of the treatment relationship, the frequency of visits, and the nature and extent of the treatment received in deciding how much weight to give even a treating physician's opinion.[7] 20 C.F.R. § 404.1527(c)(2)(i), (ii).

    The Court is not persuaded by Plaintiff's argument that the ALJ ignored the short handwritten note at the end of Dr. Sodha's analysis. The note, which explains that the Plaintiff seemed extremely paranoid around authority figures, is still inconsistent with the bulk of the evidence in the record and does not explain Dr. Sodha's opinion that the Plaintiff has marked limitations with respect to understanding and carrying out complex or detailed instructions. AR 297. Although it could be generously construed to explain the opinion that Plaintiff has marked limitations in taking instructions from supervisors, it does not explain Dr. Sodha's belief that Plaintiff would experience marked limitations in interacting with co-workers or the general public. As aptly pointed out by the Commissioner, Plaintiff has had no difficulty interacting with medical authorities in the past. AR 211 ("The claimant was generally pleasant and cooperative"), 279 ("The claimant exhibits no difficulty interacting with the clinic staff or myself"). Finally, the

---

[7] The Court thus need not address Plaintiff's argument that two visits are enough to qualify a physician as a "treating physician"—even as a treating physician, Dr. Sodha's opinions are only entitled to minimal weight if unsupported by explanation. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings").

ALJ does not appear to have entirely disregarded Dr. Sodha's opinion—he did find that "the overall record suggests greater than mild limitations in social functioning" and incorporated that information into the residual functional capacity assessment. AR 22. Thus, the ALJ did give some weight to Dr. Sodha's opinion.

In contrast, the consultative examination conducted by Dr. Bridges, to which the ALJ accorded great weight, contains a wealth of information and explanations justifying the ultimate conclusions about Plaintiff's capabilities. It is also largely consistent with the opinions rendered by Drs. Salib and Harar, to whom the ALJ gave some weight and great weight, respectively.[8] Thus, the ALJ's analysis in rejecting portions of Dr. Sodha's opinion was supported by substantial evidence. *Holohan*, 246 F.3d at 1202 ("[T]he regulations give more weight to opinions that are explained than to those that are not").

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, and Commissioner of Social Security and against Plaintiff, Calvin Russell.

IT IS SO ORDERED.

Dated: **February 18, 2015**              **/s/ Gary S. Austin**
                                                                  UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff asserts that the ALJ acted in an "arbitrary and capricious" manner by failing to give weight to Dr. Sodha's checkbox form but crediting Dr. Salib's checkbox form. Plaintiff's Opening Brief 13:9-22, ECF No. 12. But the consideration of these two forms does not occur in a vacuum--Dr. Sodha's form is contradicted by at least three other physicians, while Dr. Salib's is supported by two. Dr. Salib's form thus does not need to be granted controlling weight for the opinions he espouses to prevail in the eyes of the ALJ. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").